**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kumaresan Sandrasegaran and Rukshini Sandrasegaran, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>Nationwide General Insurance Company, an Ohio Corporation<br>Defendant | No. CV-22-00962-SMB<br><br>**ORDER** |

Before the Court is Defendant Nationwide General Insurance Company's ("Nationwide") Motion for Summary Judgment ("MSJ"). (Doc. 46.) Plaintiffs Dr. Kumaresan and Rukshini Sandrasegaran filed a Response (Doc. 49), and Defendant filed a Reply (Doc. 52). Defendant also filed a Separate Statement of Undisputed Material Facts in support of the MSJ. (Doc. 47.) Plaintiffs submitted a Controverting Statement of Facts and Separate Statement of Facts in response. (Doc. 50.) After consideration of the pleadings and the relevant law, the Court finds that oral argument is not necessary. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). For the reasons laid out below, the Court will grant in part and deny in part Nationwide's Motion.

**I.      BACKGROUND**

This claim relates to a dispute over Plaintiffs' 2021 insurance claim with Nationwide for a replacement roof for their Scottsdale, Arizona home. (Doc. 47 at 3.) On or about June 16, 2021, Plaintiffs' home suffered storm damage. (Doc. 50 at 8 ¶ 50.) They purchased the home and obtained homeowners coverage with Nationwide less than three

months prior to the storm. (Doc. 47 at 2 ¶ 8.).) Under this policy, Plaintiffs are covered against "direct physical loss to [their] dwelling" however, the policy "does not cover loss caused by 'wear and tear, marring, [or] deterioration.'" (*Id.* at 3 ¶ 13.) Dr. Sandrasegaran testified that he and his wife had no concerns about the roof prior to the storm and that the roof passed home inspection when they purchased it in March 2021. (Doc. 50 at 3 ¶ 1–2.) However, a day or two after the June storm, a ProWest representative, Chris Kraft, ("Kraft") came to Plaintiffs' door soliciting roof repair. (*Id.* at 1.) Dr. Sandrasegaran testified that Kraft showed him drone footage of the damage, and that he saw four or five roof tiles on the ground. (*Id.* at 1 ¶ 2.) It is uncontested that 95% of Kraft's pay comes on from commission earned on repairs and replacements. (*Id.* at ¶ 5 and Doc. 50 at 2 ¶ 5.) Kraft testified that "at [his] level" he doesn't "really waste his time with repairs" and "won't talk to [owners]" if he doesn't "think that [the roof] has enough damage to warrant replacing it." (Doc. 50 at 2 ¶ 5.)

Plaintiffs contracted with ProWest to replace the roof and after making a claim for loss with Nationwide hired a public adjuster, Charlie Barcia, to help settle their claim. (Doc. 50 at 2 ¶10–11.) On receiving the claim, Nationwide sent an engineer, Everett Lenhart, to inspect the roof. (Doc. 47 at 3 ¶ 14.) Plaintiff's public adjuster, Mr. Barcia, was present for this inspection. (*Id.* at ¶ 14.) After inspecting the roof, reviewing photos, considering the tiles' makeup, and searching various weather databases, Mr. Lenhart concluded that recent wind forces were structurally insignificant to un-bond or break tiles, but "were probably adequate to overturn, pivot, or displace" tiles and that these tiles were able to be repaired. (*Id.* at 3 ¶ 15 – 4 ¶ 25.) Shortly after, Mr. Barcia gave a roof replacement estimate of $185,933.37. (*Id.* at 27.) He did not explicitly review any weather data but included in his report a diagram of the damaged tiles and testified that based on various weather websites the damage stemmed from a "wind event" with winds between 50 and 60 miles per hour. (Doc. 47-4 at 21 and Doc. 50 at 5 ¶ 27)

In October 2021, Nationwide informed Plaintiffs that their policy covered the portion related to the few displaced tiles and cited the same conclusions as Mr. Lenhart.

(Doc. 47 at 5 ¶ 29.) Nationwide then closed the file because based on these conclusions the damage was less than the policy's deductible. (*Id.* at 6 ¶ 30.) Later that month ProWest gave its own estimate for the roof replacement, coming out at approximately $370,000. (*Id.* at 31.) Neither party can explicitly point to why the ProWest estimate is higher than Mr. Barcia's. (*Id.* at 6 ¶ 32; Doc. 50 at 5 32.) Regardless, ProWest hired a mechanical engineer, Phil Schembri, to handle the case. (Doc. 47 at 6 ¶ 36.) He recommended a full roof replacement. (*Id.*) He too reviewed some weather data, and concluded the roof damage was caused by wind. (*Id.* at 7 ¶ 44.)

After litigation began, Nationwide retained an independent Registered Professional Engineer/Civil Engineer expert, Heidi Watton, to assess whether Plaintiff's roof sustained damage due to winds on the claimed date. (Doc. 46 at 7.) She concluded along similar lines as Mr. Lenhart—that only the few knocked off tiles could be attributed to winds, other damage was likely due to normal wear and tear, and that displaced tiles can be individually replaced. (*Id.* at 7.) Plaintiffs dispute these conclusions, and the conclusions of Mr. Lenhart. (Doc. 49 at 6.) Plaintiffs allege that by not covering the roof repair, Nationwide (1) breached the insurance contract, and (2) that Nationwide did so in bath faith. (Doc. 1-3.) After some discovery, Nationwide now moves for summary judgment on both claims and on Plaintiffs' claim for punitive damages.

## II.     LEGAL STANDARD

Summary judgment must be granted "if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Mann v. N.Y. Life Ins. and Annuity Corp.*, 222 F. Supp. 2d 1151, 1153 (D. Ariz. 2002) (quoting Fed. R. Civ. P. 56(c)). Facts are "material" when under the governing law, they could affect the case's outcome. *Smith v. Internal Revenue Serv.*, 168 F. Supp. 3d. 1221, 1223 (D. Ariz. 2016). Summary judgment should not be granted if there is a dispute over material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also United States v. Sacramento Mun. Util. Dist.*, 652 F.2d 1341, 1344 (9th Cir. 1981) (noting

if a "contract is unclear, ordinarily summary judgment is improper as differing views of the intent of parties will raise genuine issues of material fact"). When deciding whether an asserted evidentiary dispute is genuine, a court asks whether a jury could reasonably find in the non-movants favor. Fed. R. Civ. P. 56; *see also Emeldi v. U. of Oregon*, 673 F.3d 1218, 1228 (9th Cir. 2012). However, a non-movant's bare assertions, standing alone, are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted). That said, in the summary judgment context, the Court believes the non-movant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

### III. DISCUSSION

Defendant Nationwide moves for summary judgment on both the underlying breach of contract claim, and the related bad faith and punitive damages claims. (Doc. 46 at 8, 10.) The Court will address each claim in turn. For the reasons explained below, the Court will deny Defendant's motion as to the breach of contract claim but grant the motion as to the bad faith claim.

#### A. Breach of Contract Claim

Defendant argues summary judgment is appropriate here because Plaintiff has failed to present "competent evidence that their entire roof needed replacing" due to a wind event and not just ordinary wear and tear —which is not covered by Plaintiff's policy. (Doc. 46 at 8.) Plaintiffs argue the amount of damage caused by the wind event is a disputed material fact which precludes summary judgment. (Doc. 49 at 6.)

To state a breach of contract claim under Arizona law a plaintiff must allege that "(1) a contract existed, (2) it was breached, and (3) the breach resulted in damages." *Steinberger v. McVey ex rel. Cnty. of Maricopa*, 318 P.3d 419, 434 (Ariz. Ct. App. 2014)

(citing *Thunderbird Metallurgical, Inc. v. Ariz. Testing Labs*, 423 P.2d 124, 126 (Ariz. Ct. App. 1967). In the insurance context the breach generally stems from an insurer denying contracted for coverage. *See Clark Equip. Co. v. Arizona Prop. & Cas. Ins. Guar. Fund*, 943 P.2d 793, 801 (Ariz. Ct. App. 1997). Here, Defendant did not deny coverage outright, but rather found that the amount of damage from a covered event, the storm, did not meet Plaintiffs' deductible, and therefore they do not need to pay out under the policy. (Doc. 47 at 6. ¶ 30.) Plaintiffs dispute this, arguing that the storm, not wear and tear as Defendant argues, caused the *entirety* of damage to the roof. (Doc. 50 at 10 ¶ 20.) Nationwide, through their witnesses' opinions, maintains that the storm only damaged six roof tiles. (Doc. 47 at 4 ¶ 21.) Plaintiffs maintain, through their witnesses, that the damage is much greater and requires a whole new roof. (Doc. 50 at 6. ¶ 20.)

Defendant attacks the accuracy and methods used by Plaintiffs' witnesses in drawing their conclusions. (Doc. 46 at 8–9.) They argue that Plaintiffs' witness opinions are "conclusory and self-serving" and therefore insufficient to avoid summary judgment. (Doc. 46 at 9.) *See Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir. 1994) ("Self-serving assertions without factual support in the record will not defeat a motion for summary judgment."); *Jackson v. Anchor Packing Co*., 994 F.2d 1295, 1304 (8th Cir. 1993) ("Conclusory affidavits, even from expert witnesses, do not provide a basis upon which to deny a motion for summary judgment.")

The Court agrees that conclusory statements alone do not provide a basis upon which to deny summary judgment, however the Court also believes that Mr. Barcia and Mr. Schembri's opinions are based on *some* specific facts. As Plaintiffs note, Mr. Barcia verified the storm date based on other customers in Plaintiffs' neighborhood, and various weather reports. (Doc. 47-4 at 11 ¶ 19–23.) Further, Mr. Schembri based his conclusions on his own physical inspection of the roof, photos taken by Mr. Barcia, and "weather data" and "media reports" of storms in the area. (Doc. 47 at 44.) Defendant appears to argue that even though Mr. Schembri based his conclusion on some fact, it is not enough to preclude summary judgment. (Doc. 52 at 3.) Defendant specifically notes that Mr.

Schembri admitted in his deposition that he did not know when exactly the roof tiles were broken, that he didn't know whether the weather data he reviewed was accurate, and that the tiles likely lost adhesion due to age. (*Id.*) The Court acknowledges these all likely undermine the *persuasiveness* of Mr. Schembri's testimony. But the potential disparity between the weight of parties' witnesses is for the jury to assess, not for the Court to resolve on summary judgment. *Orme Sch. v. Reeves*, 802 P.2d 1000, 1008 (Ariz. 1990) ("[I]t has also been the traditional rule that the trial judge will not weigh evidence or determine questions of credibility, will not draw an inference where conflicting inferences are possible, and will defer to the jury on all disputed material facts.").

Further, the Court is not persuaded by Defendant's use of *Archer v. Tower Hill Signature Ins. Co.,* 313 So. 3d 645 (Fla. Dist. Ct. App. 2021). Unlike in *Archer*, where the plaintiff's witness affidavits did not describe the appearance of roof damage, or witness methodology, here depositions provide this information —even if minimally. *Archer*, 313 So. 3d at 649. Finally, *Diviero v. Uniroyal Goodrich Tire Co.*, 919 F. Supp. 1353 (D. Ariz. 1996), *aff'd*, 114 F.3d 851 (9th Cir. 1997), is only minimally persuasive. Although, expert opinion testimony must meet a certain admissibility standard, unlike the defendant in *Diviero*, Defendant here did not concurrently file a motion to disqualify Plaintiffs' witnesses with this summary judgment motion, so the Court will not address those arguments here. *See Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993).

That said, because there is conflicting evidence about the extent of damage caused by the June 2021 storm, which supports a breach of contract claim for failure to pay on the insurance policy, the Court will deny summary judgment as to the breach of contract claim.

### B. Bad Faith Claim

Defendant also moves for summary judgment on Plaintiff's bad faith claim. To have a claim for bad faith Plaintiff must show:

> [T]he absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one.

> The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances.

*Noble v. Nat'l. Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981). An insurer's failure to pay a claim is not unreasonable where the claim's validity is "fairly debatable." *See Desert Mountain Properties Ltd. P'ship v. Liberty Mut. Fire Ins. Co.*, 236 P.3d 421, 442–43 (Ariz. Ct. App. 2010). Further, a reasonable investigation also allows an insurer to in good faith deny a claim. *See Schaefer v. Mass. Mut. Life Ins. Co.*, No. CV-20-01108-PHX-JJT, 2022 WL 17850718, at *8 (D. Ariz. Dec. 22, 2022).

Here, Defendant argues that under this record no reasonable jury could find that they denied the claim without a reasonable basis. (Doc. 46 at 11.) Plaintiffs argue that the issue of whether Defendant conducted a reasonable, prompt, and fair investigation is disputed and a question for the jury. (Doc. 49 at 10.) For the reasons explained below, the Court agrees with Defendant.

Plaintiffs argue that by: (1) "inexplicably" having its first adjuster close Plaintiffs' claim, causing a several week delay and (2) refusing to communicate with Plaintiff's public adjuster, Nationwide failed to conduct a reasonable investigation. (Doc. 49 at 10–12.) The Court will address these arguments in turn. First, the record does not support that Nationwide "inexplicably" closed Plaintiff's claim. Instead, uncontroverted facts show the fragility of the roofing tile and that the adjuster could not inspect the roof by foot, noting that a drone would be needed to inspect the loss —which Mr. Lenhart later used. (Doc. 50-1 at 25 and Doc. 47-6 at 5.) And second, Mr. Barcia's own testimony undercuts Plaintiffs' assertion that Nationwide would not communicate with him. He never testified that Nationwide refused to talk to him or respond to him. He merely states that he "spent a lot of time trying to get someone to call [him] back." (Doc. 50-1 at 7.)

, Other aspects of Nationwide's investigation also preclude a reasonable jury from finding that a fair investigation was not conducted, or that the claim's validity was not

"fairly debatable." First, Nationwide timely responded to Plaintiffs' claim. As they point out, the original claim report was issued about a week after the storm. (Doc. 52 at 6.) Then even after the original denial, they hired Mr. Lenhart to conduct his investigation, which was completed within six weeks after the storm—hardly a "delay" as Plaintiffs contend. (Doc. 47 at 3). Additionally, after litigation began, Nationwide hired yet another engineer, Heidi Watton, to assess damage to the roof. (Doc. 46 at 7.) She came to the same conclusion. (*Id.*)

Regarding the reasonableness of the determination, Nationwide based its coverage denial on an expert engineering report, which itself was based on analysis from (1) the National Weather Service's database, (2) mortar structural integrity, (3) and a physical analysis. Further, the insured's policy excluding wear and tear, a potential cause of the damage, gave Defendant a reasonable basis for denying the roof repair claim given that the roof is twenty years old and made of fragile tile.

From the record, no reasonable jury could conclude that Defendant acted unreasonably or without an adequate investigation. Accordingly, Defendant is entitled to summary judgment as to the bad faith claim.

### C. Punitive Damages Claim

Lastly, Defendant moves for summary judgment on Plaintiffs' claim for punitive damages. Punitive damages may be awarded in bad faith cases where there is clear and convincing evidence that a defendant acted with "an evil mind." *Thompson v. Better-Bilt Aluminum Products Co., Inc.*, 832 P.2d 203, 209–10 (Ariz. 1992); *see also Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 680 (Ariz. 1986) (noting that punitive damages "should be appropriately restricted to the most egregious of wrongs"). However, to have a viable claim for punitive damages, a plaintiff also must have a viable claim for bad faith. *See Jacobs v. Am. Fam. Mut. Ins. Co.*, No. CV-13-01404-PHX-SRB, 2014 WL 11515009, at \*4 (D. Ariz. Aug. 5, 2014) ("Because Plaintiff's bad faith claim fails, his request for punitive damages necessarily fails because such damages are not recoverable on a claim for breach of contract."). Here, because the Court finds summary judgment is appropriate

as to the bad faith claim, it necessarily precludes Plaintiffs' claim for punitive damages. Accordingly, Defendant is also entitled to summary judgment as to the claim for punitive damages.

### IV. CONCLUSION

For the above reasons,

**IT IS ORDERED granting in part and denying in part** Defendant's Motion for Summary Judgment. (Doc. 46.) The Court **grants** summary judgment on Plaintiff's bad faith claim and punitive damages claim. The Court **denies** summary judgment on Plaintiff's breach of contract claim.

Dated this 15th day of November, 2023.

_____
Honorable Susan M. Brnovich
United States District Judge